STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

CHRISTA HALL (CABN 328881)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7241
    FAX: (415) 436-7234
    Christa.Hall@acgov.org

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:22-CR-00133-VC |
| Plaintiff, | GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION OF DEFENDANT ESCOTO |
| v. | |
| MAINOR ESCOTO ESCOTO, | |
| Defendant. | |

    Mr. Escoto is charged with a single count of possession with intent to distribute fentanyl, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Dkt. No. 1. The government requests that Mr. Escoto be detained pending trial because Mr. Escoto is a danger to the community and a flight risk. A rebuttable presumption exists in this case that no condition or combination of conditions will reasonably assure Mr. Escoto's appearance as required for the safety of the community, based on Mr. Escoto's intent to sell fentanyl in violation of the Controlled Substances Act. *See* 18 U.S.C. § 3142(e)(3)(A). San Francisco police officers found a total of 345.1 grams of fentanyl on Mr. Escoto's person and inside of his backpack. Officers also uncovered a firearm. When arrested, Mr. Escoto had two pending drug-related cases out of Alameda County and one case out of San Francisco County. The safety of the community requires Mr. Escoto's detention.

**BACKGROUND**

## I. OFFENSE CONDUCT

On February 16, 2022, San Francisco police officer Hayes relayed to other officers that she had seen a wanted suspect, Mainor Escoto Escoto, near the intersection of Larkin and Eddy Streets on almost a nightly basis.[1]  Officers were provided Mr. Escoto's warrant information, a description of his clothing, and a photo from an arrest report.  One of the officers, Officer Murphy, recognized Mr. Escoto from the photo as a person he saw on a nightly basis in the area of Eddy and Larkin Streets.  Officer Hayes told officer Murphy that Mr. Escoto failed to appear on February 1, 2022, in Alameda County Superior Court.  Officer Murphy conducted a computer query in his patrol vehicle and confirmed Mr. Escoto had a felony warrant out of Alameda County with a bail of $55,000.

Officer Murphy went to the area of Eddy and Larkin Streets and observed Mr. Escoto loitering on the southwest corner.  Mr. Escoto wore a blue beanie and a Jordan backpack.  Officers arrested Mr. Escoto.  A search of Mr. Escoto uncovered:

- Suspected fentanyl (purple) – one baggie in his hoodie pouch pocket

- Suspected fentanyl (pink) – one baggie in his hoodie pouch pocket

- Suspected fentanyl (green) – one baggie in his hoodie pouch pocket

- Suspected fentanyl (white) – one baggie in his hoodie pouch pocket

- Suspected Methamphetamine – three baggies in his hoodie pouch pocket

- Suspected Heroine – one baggie in his hoodie pouch pocket

- Suspected Cocaine Base – pill bottle in his hoodie pouch pocket

- A digital scale in his hood pouch pocket

- Cash in his left rear pocket inside his wallet

When officers went to search the backpack, Mr. Escoto said, "that's not mine."  Officers looked inside the bag and discovered numerous plastic sandwich baggies and a liquor store shopping bag.  Inside the liquor store bag was a loaded pistol; a Polymer 80 Glock style with no serial number.  Back at the police station, officers searched the backpack further and discovered:

---

[1] The facts are taken from the initial Report, San Francisco Police Department, Incident No. 220108333, Feb. 16, 2022.  The government can provide copies of the police reports if requested.

- Suspected fentanyl (off white) – four baggies

- Suspected fentanyl (dark green) – one baggie

- Suspected fentanyl (light green) – one baggie

- Suspected fentanyl (pink) – twelve small press lock baggies inside of a clear bag

- Suspected fentanyl (white) – eight small press lock baggies inside of a clear bag

- Suspected fentanyl (white) – two baggies

Most of the drugs were weighed and TruNarc tested. All the drugs came back presumptive positive except the heroine, which was not tested. The total weight of the drugs amounted to 403.7 grams—345.1 grams of which was fentanyl. According to Officer Murphy, and based on his training and experience with narcotics, assuming a $30 per gram price for fentanyl, the seizure is worth roughly $10,497.[2] The neighborhood including Eddy and Larkin Streets is a high crime area known specifically for the sale of narcotics.[3]

## II.   CRIMINAL HISTORY

Mr. Escoto is a 20-year-old citizen of Honduras.[4] In approximately one year he has been arrested multiple times in relation to drugs.

February 4, 2021: According to the Alameda County District Attorney's Office, a search warrant was executed where Mr. Escoto lived with other occupants. Within the home, officers uncovered 2.3 kilograms of heroin, almost 200 grams of cocaine, 3 grams of fentanyl, 869 grams of meth, and $39,052 cash.[5] Mr. Escoto was arrested along with five other occupants on February 4, 2022. On September 27, 2021, Mr. Escoto failed to appear for a court appearance, and a $250,000 bench warrant issued. At some point, Mr. Escoto appeared, and he was eventually released by the court subject to a search clause while remaining out on bail.

November 29, 2021: While out on bail, according to San Francisco Police Report No. 210788484, Mr. Escoto sold 1.6 grams of fentanyl (net weight) to an undercover San Francisco Police

---

[2] By my own calculation; $30 x 345.1 (grams of fentanyl) = $10,353.

[3] Statement by Officer Murphy.

[4] Statement by Jeffery Castro, Deportation Officer, U.S. Immigration and Customs Enforcement Agency.

[5] Alameda County Docket No. 21-CR-010769A. Six men were charged together on this docket.

officer in the area of Larkin and Eddy Streets in San Francisco.  Mr. Escoto was wearing an Air Jordan backpack strapped over both shoulders.  No arrest was made on this date.

December 15, 2021:[6]  While Mr. Escoto continued to be released out on bail, according to San Francisco Police Report No. 210829339, Mr. Escoto was arrested at his home in Oakland after a search of his room uncovered 219.8 grams of fentanyl (gross weight), 11.6 grams of cocaine base (net weight), and 30.6 grams of methamphetamine (gross weight).  Four other occupants were also arrested.[7]  San Francisco police officer Hayes, while at the home search, recognized an Air Jordon backpack in Mr. Escoto's room from the November 29, 2021, controlled buy.  An Alameda County Superior Court Judge set Mr. Escoto's bail at $50,000.

February 16, 2022: Again, while out on bail, Mr. Escoto was arrested by San Francisco Police related to this charged incident before the Court and mentioned above.  Mr. Escoto was held in custody pending his charge.  The San Francisco District Attorney's Office dismissed its case against Mr. Escoto in order for the United States to pursue its charge based on the same offense conduct.

After Mr. Escoto's San Francisco charges were dropped, he transferred into custody under Alameda County's jurisdiction on his pending drug charges.  The Alameda County District Attorney's Office released Mr. Escoto on both of his matters in order for the United States to pursue this charge.  Mr. Escoto was then transferred into federal jurisdiction and arraigned in front of Magistrate Judge Spero on May 4, 2022.  At the hearing, the government requested that Mr. Escoto be detained, and a detention hearing was set.

## LEGAL STANDARD

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant

---

[6] *See* OFFICE OF THE MAYOR, *Mayor London Breed Declares State of Emergency in the Tenderloin*, Dec. 17, 2021, available at https://sfmayor.org/article/mayor-london-breed-declares-state-emergency-tenderloin (last visited May 9, 2022).

[7] Alameda County Docket No. 21-CR-015008.

is a danger to the community must be supported by clear and convincing evidence.  18 U.S.C.

§ 3142(f)(2)(B).  A finding that a defendant is a flight risk need only be supported by a preponderance

of the evidence.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  "[T]he Bail Reform

Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)."  *See*

*United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  Categorical grants or denials of

bail, not tethered to an individualized determination, are impermissible.  *Id*.  Consideration of factors

outside the articulated factors set forth in Section 3142 is also disfavored.  *Id*.

Where there is probable cause that a defendant has violated the Controlled Substances Act and

faces a maximum of 10 years in person or more (as here), courts apply a rebuttal presumption against

the defendant that no condition or combination of conditions reasonably will assure the defendant's

appearance as required and the safety of the community.  *See* 18 U.S.C. § 3142(e)(3)(A).  Under this

scheme, the burden of production then shifts to the defendant.  *United States v. Hir*, 517 F.3d 1081,

1086 (9th Cir. 2008).  Although the presumption is rebuttal, it is not a "bursting bubble."  *United States*

*v. Jessup*, 757 F.2d 378, 382-383 (1st Cir. 1985) (Breyer, J.), *abrogated on other grounds by United*

*States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990).  In other words, the presumption is not so weak that if

a defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge

(or jury) to decide the question without reference to the presumption."  *Id*. (further stating that such an

approach would "render the presumption virtually meaningless" because a defendant can "always

provide the magistrate with *some* reason" (emphasis added)).  Even if the defendant rebuts the

presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding

militating against release that is to be weighted along with other relevant factors.  *See U.S. v. King*, 849

F.2d 485 (11th Cir. 1988); *accord United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999)

(citing *Jessup*, 757 F.2d at 389).

If the court concludes that the defendant has rebutted the statutory presumption of detention, the

court must consider four factors in determining whether the pretrial detention standard is met:  (1) the

nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant;

(3) the history and characteristics of the defendant, including the defendant's character, physical and

mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

**ARGUMENT**

Defendant cannot overcome the presumption in favor of detention.  To the contrary, if released pre-trial, he has every incentive to either continue selling fentanyl in the Tenderloin *or* flee to his home country of Honduras.

I.  **Mr. Escoto is Subject to a Presumption in Favor of Detention.**

Mr. Escoto is charged with one violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) for distribution of fentanyl.  This carries a maximum penalty of 20 years' imprisonment. 21 U.S.C. § 841(b)(1)(C).  As such, Mr. Escoto is subject to a rebuttable presumption in favor of detention.  *See* 18 U.S.C. § 3142(e)(3)(A).  In order to overcome this presumption, defendant bears the burden to prove that he is both not a flight risk and that his release will not endanger the community.  Under these circumstances he cannot.

II. **Escoto Cannot Rebut the Presumption in Favor of Detention and Should Be Detained Because He is Dangerous to the Community.**

Mr. Escoto is directly contributing to the "ground zero" of an "opioid overdose crisis" in and around the Tenderloin neighborhood that kills our community's residents when he sells fentanyl and other drugs on the streets.[8]  "We are losing over two people a day to drug overdoses, mostly to fentanyl, and mostly in the Tenderloin and SoMa. This is a public health emergency demanding a crisis level

---

[8] Erin McCormick, *The daily battle to keep people alive as fentanyl ravages San Francisco's Tenderloin*, THE GUARDIAN, April 23, 2022, https://www.theguardian.com/us-news/2022/apr/23/san-francisco-homelessness-street-team-fentanyl (last visited May 6, 2022).

response, with massive urgency, coordination, and determination to confront this epidemic."[9]  Keeping Mr. Escoto detained will save lives.

      The amount of fentanyl and other drugs found on Mr. Escoto at the time of his arrest is extraordinarily dangerous.  On Mr. Escoto's person, San Francisco Police Officer Murphy found four baggies of suspected fentanyl in assorted colors in his hoodie pouch pocket.[10]  Also found in Mr. Escoto's hoodie pouch pocket were three baggies of suspected methamphetamine, one baggie of suspected heroin, a pill bottle with suspected cocaine base, and a working digital scale.  Mr. Escoto had $60 cash in his wallet located in his left rear pocket.

      Mr. Escoto was also wearing a Jordan backpack.  A search of the backpack uncovered a loaded Polymer 80 Glock style non-serialized firearm along with twenty-eight baggies of suspected fentanyl.  All of the suspected narcotics were weighed and TruNarc tested at the police station.  All the drugs tested returned presumptively positive.  According to Officer Murphy, the total weight of the narcotics seized from Mr. Escoto was 403.7 grams; 345.1 grams of which was fentanyl.  Based on his training and experience, assuming a $30 per gram price for fentanyl, Mr. Escoto was carrying approximately $10,497 in just the fentanyl alone.[11]

      This is extraordinary because the DEA estimates that a mere two milligrams of fentanyl—or 0.002 grams—can be lethal depending on a person's body size, tolerance, and past usage.  Below is a depiction of what 2 milligrams—i.e., a deadly does—of fentanyl looks like:

---

[9] *Supra*, note 6.

[10] Officer Murphy, San Francisco Police Report, Incident No. 22018333, Feb. 16, 2022.

[11] *Id*.



Taking the fentanyl recovered during his arrest and search, Mr. Escoto possessed nearly *172,500 times* that amount of fentanyl.

Mr. Escoto turned 20 years old this March and in approximately one year he has been arrested three times for drug related charges and has sold fentanyl at least once to an undercover police officer. The courts have given Mr. Escoto the opportunities to remain out of custody on bail and subject to conditions pending his charges; however, when released, Mr. Escoto has shown that he continues to get ahold of a significant amount of narcotics and put those drugs in the hands of the people in our community.

If Mr. Escoto were to be released, it can be inferred that Mr. Escoto will go right back to bringing fentanyl to the streets of the Tenderloin and selling fentanyl putting the community's lives at risk.  Based on this, the government requests Mr. Escoto remain detained.

III.    **Mr. Escoto Poses a Serious Flight Risk.**

Not only does Mr. Escoto present a serious risk to the community, but he is also a flight risk. For the first time, Mr. Escoto is facing real and serious consequences.  The prospect of a federal conviction and years in federal prison provide him with significant motivation to escape the consequences of his actions and flee.

Mr. Escoto continues to ignore the law.  Both Alameda and San Francisco Counties arrested Mr. Escoto on drug charges, and he continues to sell.  If the court were to release Mr. Escoto with conditions, his history shows that he will likely ignore the court's order.

1      Mr. Escoto is a young man and citizen of Honduras.  Based on the police reports, Mr. Escoto

2  has been living with other drug dealers who were arrested by the state.  He has no were to go.  If the

3  court were to release him to a halfway house, Mr. Escoto will flee.

4      In sum, based on these reasons, the risk that Mr. Escoto will ignore the conditions and flee is too

5  great.

6  **IV.    Both the San Francisco and Alameda District Attorney's Offices Have Released Mr. Escoto**

7  **in Order for His Federal Charge to Take Priority.**

8      Mr. Escoto was in San Francisco Custody when the federal grand jury indicted him on this

9  charge on March 24, 2022.  The San Francisco District Attorney's Office dismissed their case against

10  Mr. Escoto so that the Northern District of California could pursue its charge against Mr. Escoto.  Mr.

11  Escoto was then immediately processed into Alameda County's jurisdiction based on its own charges

12  and warrant.  The Alameda County District Attorney's Office agreed to release Mr. Escoto from its

13  custody to allow this federal case to move forward.  Mr. Escoto is now in federal custody on this charge.

14  The government respectfully requests that Mr. Escoto not be released and the community protected.

15  **CONCLUSION**

16      For the foregoing reasons, the Court should grant the government's motion to detain Mr. Escoto

17  pending trial.

18

19  DATED:  May 9, 2022                                        Respectfully submitted,

20                                                                      STEPHANIE M. HINDS
                                                                        United States Attorney

21

22                                                                      _Christa Hall_____
                                                                        CHRISTA HALL

23                                                                      Assistant United States Attorney

24

25

26

27

28

GOV. DETENTION MEMO
3:22-CR-00133-VC                          8